1  Marc J. Randazza, CA Bar No. 269535
   Alex J. Shepard, CA Bar No. 295058
2  RANDAZZA LEGAL GROUP, PLLC
3  2764 Lake Sahara Drive, Suite 109
   Las Vegas, Nevada 89117
4  Telephone: 702-420-2001
   ecf@randazza.com
5

6  Attorneys for Plaintiff
   *Free Speech Systems, LLC*
7

8          **IN THE UNITED STATES DISTRICT COURT**
           **NORTHERN DISTRICT OF CALIFORNIA**
9          **SAN FRANCISCO DIVISION**

10

11 **FREE SPEECH SYSTEMS, LLC**,                 Case No. 3:19-cv-00711-WHO
    a Texas limited liability company
12                                                **PLAINTIFF'S MOTION TO DISMISS FIRST**
             Plaintiff,                           **AMENDED COUNTERCLAIMS**
13
        vs.
14                                                **Date:** June 12, 2019
15 **PETER MENZEL**, an individual,              **Time:** 2:00 p.m.
16          Defendant.                            Hon. William H. Orrick
17

18

19

20

21

22

23

24

25

26

27

RANDAZZA | LEGAL GROUP

**TABLE OF CONTENTS**

1.0   INTRODUCTION ................................................................................................ 1

2.0   FACTUAL BACKGROUND .............................................................................. 1

3.0   LEGAL STANDARDS ....................................................................................... 4

4.0   ARGUMENT ....................................................................................................... 4

   4.1   Mr. Menzel's Claims are Time-barred ...................................................... 4

   4.2   Mr. Menzel Fails to State a Claim for Copyright Infringement ............. 6

   4.3   FSS's Use of Mr. Menzel's Photographs is a Fair Use .......................... 8

     4.3.1   Factor one: purpose and character of the use ............................... 8

     4.3.2   Factor two: nature of the copyrighted work .............................. 11

     4.3.3   Factor three: amount and substantiality of portion taken ........... 12

     4.3.4   Factor four: effect on the market ............................................... 13

   4.4   Mr. Menzel Does Not State a Claim for Violation of the DMCA ......... 14

5.0   CONCLUSION ................................................................................................. 16

**TABLE OF AUTHORITIES**

**CASES**

*Ashcroft v. Iqbal*, 556 U.S.

  662, 677 (2009) .................................................................................. 4, 14

*Bell Atl. Corp. v. Twombly*,

  550 U.S. 544, 570 (2007) ............................................................................ 4

*Branch v. Tunnell*,

  14 F.3d 449, 453-54 (9th Cir. 1994) ........................................................ 2

*Campbell v. Acuff-Rose Music, Inc.*,

  510 U.S. 569, 579 (1994) ................................................................ 8, 12, 13

*Kelly v. Arriba Soft Corp.*,

  336 F.3d 811, 821 (9th Cir. 2003) .......................................................... 13

*L.A. Times v. Free Republic*,

  2000 U.S. Dist. LEXIS 5669, *48-50 (C.D. Cal. Mar. 31, 2000) ............... 10

*Leadsinger, Inc. v. BMG Music Pub.*,

  512 F.3d 522, 530 (9th Cir. 2008) ............................................................ 8

*Mattel, Inc. v. Walking Mountain Prods.*,

  353 F.3d 792, 799-800 (9th Cir. 2003) .................................................. 11

*Perfect 10, Inc. v. Amazon.com, Inc.*,

  508 F.3d 1146, 1161, 1167, 1171 (9th Cir. 2007)........................... 6, 7, 12

*Playboy Entm't Grp, Inc. v. Happy Mutants, LLC*,

  2018 U.S. Dist. LEXIS 69325, *1-3 (C.D. Cal. Feb. 14, 2018) .................. 7

*Polar Bear Prods., Inc. v. Timex Corp.*,

  384 F.3d 700, 706 (9th Cir. 2004)................................................... 4, 5, 6

*Roley v. New World Pictures, Ltd.*,

  19 F.3d 479, 481 (9th Cir. 1994)............................................................. 4

RANDAZZA | LEGAL GROUP

*Sega Enters. v. Accolade, Inc.*,
   977 F.2d 1510, 1522 (9th Cir. 1992) ............................................................. 10

*Seltzer v. Green Day, Inc.*,
   725 F.3d 1170, 1177 (9th Cir. 2013) ............................................ 9, 11, 12, 13

*Seven Arts Filmed Entm't Ltd. v. Content Media Corp., PLC*,
   733 F.3d 1251, 1254 (9th Cir. 2013) ............................................................... 5

*Sony Computer Entertainment, In. v. Connectix Corp.*,
   203 F.3d 596, 607 (9th Cir. 2000) ................................................................. 10

*United States v. Ritchie*,
   342 F.3d 903, 908 (9th Cir. 2003) ................................................................... 2

*Worldwide Church of God v. Philadelphia Church of God, Inc.*,
   227 F.3d 1110, 1118 (9th Cir. 2000) ............................................................. 12

**STATUTES**

17 U.S.C. § 107 ........................................................................................................ 8, 9

17 U.S.C. § 1202 .................................................................................................... 14, 16

17 U.S.C. § 507 ............................................................................................................. 4

**RULES**

Fed. R. Civ. P. 12(b)(6) ................................................................................. passim

**PLEASE TAKE NOTICE THAT** on June 12, 2019 at 2:00 p.m. Plaintiff Free Speech Systems, LLC ("FSS") will and hereby does move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss all of Counterclaimant Peter Menzel's First Amended Counterclaims (Doc. No. 20) with prejudice for failure to state a claim.

## 1.0    INTRODUCTION

FSS owns and operates a publicly accessible news web site, <infowars.com>.  In April 2012, FSS reposted an article on that site initially appearing on another news web site, <naturalsociety.com>, specializing in information on health and nutrition.  This article discussed the health of several families from around the world using nine photographs taken by Mr. Menzel depicting families from multiple countries and their average weekly groceries. Because these photos were the very subject of the article's commentary, it would have made no sense not to use them.

Mr. Menzel, after waiting nearly seven years, brought claims for copyright infringement and violation of the DMCA for alleged removal of copyright management information based on FSS's use of these photographs in the article on <infowars.com>.  These claims are well outside the three-year statute of limitations under the Copyright Act and are thus time-barred.  Mr. Menzel also fails to state a claim substantively because FSS's use of his photos is a fair use and he does not allege a claim for violation of the DMCA.  Mr. Menzel adds some additional, unsupported allegations in his Amended Counterclaims in direct response to FSS's first Motion to Dismiss, but these do not save him.  The Court should dismiss all of Mr. Menzel's claims with prejudice.

## 2.0    FACTUAL BACKGROUND

Mr. Menzel took multiple photographs which he published on his web site and included in a book titled "Hungry Planet: What the World Eats" ("Hungry

Planet"). (Doc. No. 20 at ¶ 8.) He alleges that Hungry Planet and his photographs contained therein feature copyright management information ("CMI") showing Mr. Menzel is the author of these photographs. (*See id.* at ¶ 9.)

FSS is the owner and operator of the web site <infowars.com>. (*See id.* at ¶ 11.) On April 30, 2012, it published an article on its web site titled "Amazing Photos Show What the World Really Eats" under the byline Anthony Gucciardi, which features some of Mr. Menzel's photographs appearing in Hungry Planet (the "Article"). (*See* Doc. No. 1-1;[1] Doc. No. 20 at ¶ 11; Doc. No. 21-1.) The Article contains several pieces of commentary on the subject of what different families from around the world eat and what implications their dietary choices are likely to have on their long-term health. (*See* Doc. No. 1-1.) The Article also displays nine photographs allegedly taken from Hungry Planet, each of which shows a family from a different country and its groceries for a week, and each of which is accompanied by commentary added in the Article. (*See id.*) The second paragraph in the Article shows that these photographs are taken from Hungry Planet and provides a hyperlink to the web site <amazon.com>'s page offering copies of Hungry Planet for sale, with each listing of Hungry Planet clearly stating that Mr. Menzel is an author of the book. (*See* Doc. No. 1-1; *see also* <amazon.com> store page[2] for Hungry Planet, Doc. No. 17-1.) The end of the Article also states "[t]his post first appeared at *Natural Society*" and provides a

---

[1] Generally, review of a Rule 12(b)(6) motion is limited to the contents of the complaint, but a court may consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). A court may also consider documents whose contents are alleged in a complaint and whose authenticity are not questioned by any party on a Rule 12(b)(6) motion. *See Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994). Mr. Menzel's counterclaims repeatedly refer to this article, and thus the Court may consider it in its entirety in reviewing this Motion.

[2] While the <amazon.com> store page itself is not referenced in Mr. Menzel's counterclaims, a hyperlink is provided to it in the Article, which is referenced multiple times in the Counterclaims. This page may thus be considered on a Rule 12(b)(6) motion.

hyperlink to, verbatim, the exact same article by the same author with the same photographs on the web site <naturalsociety.com>.  (*See* Doc. No. 1-1; *see also* <archive.org>[3] screenshot of Natural Society article, Doc. No. 17-2.)  Mr. Menzel thus alleges, at most, that FSS copied another article which reproduced images from Hungry Planet while providing the source of the photographs.

The entire factual premise of Mr. Menzel's claim for direct infringement is faulty, however, because FSS does not actually host any allegedly infringing pages on its web site.  Instead, it displays them via in-line hyperlinking, a process by which an image hosted on one site is displayed on another site.  This is evidenced by the fact that opening any of the allegedly infringing images in the Article takes the user to the <naturalsociety.com> web site, where the images are stored.  (*See* allegedly infringing image at <naturalsociety.com>, Doc. No. 17-3; *see also* Declaration of Heather Ebert Doc. No. 17-4, at ¶ 6.)[4]

Mr. Menzel alleges that the photographs in the Article "were altered to remove certain of Counterclaimant's [CMI]," but does not specify who removed it or what CMI was removed.  (Doc. No. 20 at ¶ 12.)  He also alleges that the photos at issue were available to FSS through Mr. Menzel's web site and both the digital and print versions of Hungry Planet.  (*See id*. at ¶ 17.)  He does not, however, allege from which of these sources FSS allegedly took the photos.  In either event, this allegation is contradicted by the Article itself, which shows that the photos were taken from an article on the Natural Society web site, and not Mr. Menzel's web site or Hungry Planet.

---

[3] The original article has been removed from the Natural Society web site, but is still available through the web site <archive.org>, which has a tool called The Wayback Machine which archives web pages of various web sites at various times.
[4] These images are accessible through the Article at issue and are thus evidence properly considered at the motion to dismiss stage.

RANDAZZA | LEGAL GROUP

**3.0   LEGAL STANDARDS**

A party is entitled to dismissal under Fed. R. Civ. P. 12(b)(6) if a plaintiff's complaint does not set out "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677. The recitation of facts '"merely consistent with' a defendant's liability" falls short of a plausible entitlement to relief. *Id*. (quoting *Twombly*, 550 U.S. at 557). In deciding on a motion to dismiss, a court does not accept as true "legal conclusions" contained in the complaint. *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown[n]' – 'that the pleader is entitled to relief.'" *Id*.

**4.0   ARGUMENT**

**4.1   Mr. Menzel's Claims are Time-barred**

Mr. Menzel's claims fail at the outset because he has brought them well past the relevant statute of limitations. 17 U.S.C. § 507(b) provides that "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." In the Ninth Circuit, the term "accrue" under the statute is defined as when the copyright holder '"has knowledge of a violation or is chargeable with such knowledge."' *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 706 (9th Cir. 2004) (quoting *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994)). Recovery for infringement that occurs after the three-year period is only possible where "the copyright owner did not discover – **and reasonably could not have discovered** – the

infringement before the commencement of the three-year limitation period." *Timex*, 384 F.3d at 706.   Thus, either actual or constructive knowledge of infringement causes a claim to accrue.  Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate when it is apparent on the face of the complaint that an affirmative defense, such as claims being time-barred, applies. *See Seven Arts Filmed Entm't Ltd. v. Content Media Corp., PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013).

It is apparent, upon a cursory review of Mr. Menzel's Counterclaims, that both of his claims are time-barred.   While the exhibit to his Amended Counterclaims does not show the entire context of the allegedly infringing article on <infowars.com>, the Amended Counterclaims refer to this article, and it is thus properly considered on a motion to dismiss.  The article, in its entirety, is found at Doc. No. 1-1, which shows that it was published on April 30, 2012.  The article was published on the generally accessible web site <infowars.com>, and there is nothing in Mr. Menzel's Counterclaims to suggest any impediment to discovering the article after it was published.  Indeed, a simple reverse-image search using the Google search engine, the most basic form of investigation of online infringement of a photograph, would have revealed the article.

Mr. Menzel attempts to plead around this defect in his Amended Counterclaims by claiming that he "does not frequent www.infowars.com, and could not reasonably have discovered the Subject Post" before December 2018. (Doc. No. 20 at ¶ 11.)  However, only the first half of this sentence is factual, and only goes to actual knowledge.   The second half, related to constructive knowledge, is a conclusory statement going to an element of this defense and is not presumed to be true for purposes of this Motion.

Mr. Menzel brought his claims nearly **seven years** after FSS's alleged copyright infringement.  He may only bring his claims, then, if he did not discover

RANDAZZA | LEGAL GROUP

or could not have reasonably discovered FSS's alleged infringement by, at the latest, March 11, 2016. *See Timex*, 384 F.3d at 706. But Mr. Menzel's Amended Counterclaims only allege that he did not have actual knowledge of the alleged infringement until December 2018, and FSS's article had been publicly available for nearly four years by that time. Had he performed any investigation of unauthorized use on or after April 30, 2012, he would have discovered FSS's use of his photographs. He thus reasonably could have brought his claims within the three-year limitation period but chose not to do so. This precludes any recovery and is a sufficient ground for dismissal of all Mr. Menzel's claims with prejudice.

### 4.2   Mr. Menzel Fails to State a Claim for Copyright Infringement

Mr. Menzel alleges that FSS "published a post displaying" allegedly infringing images (Doc. No. 20 at ¶ 11), "used, displayed, and distributed images that were copied from the Subject Photographs, and exploited said images" (*Id.* at ¶ 18), and "creat[ed] an infringing and/or derivative work from the Subject Photographs and publish[ed] the work which infringes the Subject Photographs to the public." (*Id.* at ¶ 19.) Mr. Menzel's factual allegations supporting his claim for direct copyright infringement are factually incorrect and contradicted by the contents of the allegedly infringing Article.

As explained in Section 2.0, *supra*, the allegedly infringing images in the Article are not hosted by FSS; they are hosted at <naturalsociety.com>, where the article originated, and merely displayed on <infowars.com> through the process of in-line hyperlinking. (*See* Doc. No. 17-4 at ¶ 6.) Third-party servers hosted the images and the Article merely directed users' browsers to them via this process, which expressly is not copyright infringement in this Circuit. *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1161 (9th Cir. 2007) (finding no infringement where defendant merely directed users to infringing images stored by third party);

see also *Playboy Entm't Grp, Inc. v. Happy Mutants, LLC*, 2018 U.S. Dist. LEXIS 69325, *1-3 (C.D. Cal. Feb. 14, 2018).  Mr. Menzel cannot make out a claim for direct infringement, and this claim must be dismissed.

Mr. Menzel additionally alleges that FSS and unnamed counterdefendants "are contributorily liable for the infringement alleged herein because they were aware of the infringing conduct, and materially contributed to that infringement by re-publishing an infringing article, broadening the exposure and reach of the infringing article, reaping additional advertising revenue, and if the images are or were hosted outside of [FSS's] servers – directing additional online traffic to a prior publication of the infringing article and accused images."  (Doc. No. 20 at ¶ 22.) Liability for contributory infringement may attach only where "one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another," and the plaintiff must also establish infringing activity by third parties.  *Perfect 10*, 508 F.3d at 1171.  Merely alleging that a defendant "provided the means to accomplish an infringing activity is insufficient to establish a claim for copyright infringement."  *Tarantino v. Gawker Media, LLC*, 2014 U.S. Dist. LEXIS 77726, *10 (C.D. Cal. Apr. 22, 2014).

In *Tarantino*, the defendant merely provided links to copies of a screenplay that were hosted on third-party web sites, which the court found was insufficient to establish contributory infringement.  *See id*.  Furthermore, the plaintiff did not allege and could not show that any third parties engaged in direct infringement because the defendant hosted these links; the plaintiff merely alleged the possibility of direct infringement by third parties, which was insufficient for contributory infringement.  *See id*. at *10-11.  The inability to identify any specific acts of direct infringement caused or facilitated by the defendant's providing links to the screenplay was fatal to the plaintiff's claim.  *See id*. at *11.

As in *Tarantino*, Mr. Menzel does not identify a direct infringer and does not identify any act by FSS to contribute or induce this infringement.  He alludes to unnamed and unidentified co-defendants but does not identify any acts of direct infringement by them, nor any subsequent acts of direct infringement that can be attributed to FSS's alleged actions.  Mr. Menzel thus fails to state a claim for contributory infringement.

### 4.3    FSS's Use of Mr. Menzel's Photographs is a Fair Use

17 U.S.C. § 107 sets out a four-factor test for determining whether a use of a copyrighted work is a fair use that does not infringe an author's copyright.  These factors are:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.  The defense of fair use may properly be adjudicated on a motion to dismiss when it is appropriately raised and there are no material facts in dispute. *See Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 530 (9th Cir. 2008).

### 4.3.1   Factor one: purpose and character of the use

The purpose of this factor is to determine "whether the new work merely 'supersede[s] the objects' of the original creation . . . or instead adds something new, with a further purpose of different character, altering the first with new expression, meaning, or message," i.e., whether the use is "transformative." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994) (citations omitted). Other factors in the fair use analysis weigh less the more transformative a use is. *See id.*  "[A]n allegedly infringing work is typically viewed as transformative as long as new expressive content or message is apparent."  *Seltzer v. Green Day, Inc.*,

RANDAZZA | LEGAL GROUP

725 F.3d 1170, 1177 (9th Cir. 2013). "This is so even where . . . the allegedly infringing work makes few physical changes to the original or fails to comment on the original." *Id*. (collecting cases). The Copyright Act explicitly contemplates that use of a copyrighted work "for purposes such as criticism, comment, news reporting, teaching . . . scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107.

Mr. Menzel only alleges copyright infringement of his photographs, and not of any text in Hungry Planet. The Article contains a discussion of the nutritional habits of families around the world and expresses concern about the health implications of these diets, including commentary that the disproportionality between the per capita spending on health care in the United States and its global ranking for quality of care is at least partly attributable to a poor diet. (*See* Doc. No. 1-1.) To illustrate this point, the Article displays Mr. Menzel's photographs and comments on the nature of each subject family's diet. (*See id*.) The Article describes the contents of the food purchased by each family, characterizes each photograph as showing the average diet for a family in that country, and expresses an opinion regarding what effect that diet may have on the health of average families. (*See id*.) In commenting on each photograph, the Article also compares the diets of several different families. (*See id*.)[5]

The Article's use of Mr. Menzel's photographs is plainly a use for news reporting, educational, and commentary purposes. It provides informational content regarding the health and diet of families from multiple countries. Mr. Menzel only alleges infringement of the photographs themselves and the text of the Article is entirely original. The text of the Article specifically describes the

---

[5] Exhibit A to the Amended Counterclaims selectively crops out the commentary accompanying each photograph in the Article to falsely suggest this commentary does not exist. (*See* Doc. No. 21-1.)

contents of the photographs, provides educational commentary on the nutritional content of each average family's groceries, and draws conclusions about what health effects such a diet may have for each family. The photographs themselves do not provide this information or context, and so the commentary added by the Article places the photographs in a different context. FSS's use of Mr. Menzel's photographs in the Article is thus highly transformative.

Another important consideration as to this factor is whether the use is commercial in nature. The question is not whether any tangential connection to a profit motive exists, but rather whether the use is directly commercial or merely indirectly relates to commercial activity. *See L.A. Times v. Free Republic*, 2000 U.S. Dist. LEXIS 5669, *48-50 (C.D. Cal. Mar. 31, 2000) (citing *Sega Enters. v. Accolade, Inc.*, 977 F.2d 1510, 1522 (9th Cir. 1992) and *Sony Computer Entertainment, In. v. Connectix Corp.*, 203 F.3d 596, 607 (9th Cir. 2000)). *Free Republic* dealt with a bulletin board web site whose members posted news articles on the site to which they added remarks or commentary. *See* 2000 U.S. Dist. LEXIS 5669 at *1. The case dealt with users who posted the entire text of news articles on Free Republic. *See id*. Though the site did not sell these articles or charge members for access to them, it did provide links to third-party web sites soliciting donations for Free Republic and offering "Free Republic-related souvenir items in exchange for donations." *Id*. at *11-12. The court found that Free Republic's use was not "strictly commercial" and, at most, "they derive[d] indirect economic benefit by enhancing the website's cachet, increasing registrations, and hence increasing donations and other forms of support." *Id*. at *50-51.[6]

---

[6] The court ultimately found that the first factor weighed against the defendant, but this was because the use was not transformative in a very different set of facts than what is present here. *See id*. at *52-54.

There is no allegation that FSS sells the photographs at issue, charges users to access them, or receives any other form of direct commercial benefit from its use of Mr. Menzel's photographs.[7]  The only allegation relevant to this issue is that FSS "operates a well-known website – InfoWars.com – and derives revenues by selling advertising against its online content, and that those revenues increase as traffic to the website increases." (Doc. No. 20 at ¶ 15.)[8]  Added to the Amended Counterclaims is an allegation that FSS "derived advertising revenue from views of the Subject Post." (*Id*.)  However, there is not even an allegation that FSS's use of Mr. Menzel's photographs increased traffic to <infowars.com> or increased advertising revenue to the site.  Mr. Menzel thus alleges, at most, only an indirect financial benefit that weighs against a finding of commercial purpose.

Given the transformative and non-commercial purpose and character of FSS's use of Mr. Menzel's photographs in the Article, this factor weighs in FSS's favor.

### 4.3.2  Factor two: nature of the copyrighted work

This factor considers whether the copyrighted work allegedly infringed is factual or expressive in nature, though this "factor typically has not been terribly significant in the overall fair use balancing." *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 799-800 (9th Cir. 2003).  It also considers "the extent to which a work has been published," as "[p]ublished works are more likely to qualify as fair use because the first appearance of the artist's expression has already occurred." *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1178 (9th Cir. 2013).

---

[7] If anyone received a direct commercial benefit from FSS's use, it was Mr. Menzel due to the Article providing a direct link to an authorized vendor of Hungry Planet.  (*See* Doc. Nos. 1-1 and 17-1.)

[8] Mr. Menzel also alleges that FSS "obtained direct and indirect profits" from its alleged infringement, but this is a conclusory non-factual allegation the Court need not accept as true. (Doc. No. 20 at ¶ 24.)

RANDAZZA | LEGAL GROUP

The photographs in question are not highly creative expressive works of art. They are pictures of families standing next to a week's worth of their groceries, meant to convey what different families from around the world eat on a day-to-day basis.  (*See* Doc. Nos. 1-1 & 21-1.)  Mr. Menzel published these photographs both online and in the Hungry Planet book prior to FSS's use of them.  (*See* Doc. No. 20 at ¶¶ 8, 13.)  Though Mr. Menzel may have exercised a modicum of creativity in composing his photographs, this factor (to the extent it is weighed at all) is at best neutral.

### 4.3.3   Factor three: amount and substantiality of portion taken

"The third factor looks to the quantitative amount and qualitative value of the original work used in relation to the justification for that use." *Seltzer*, 725 F.3d at 1178.  This is because "the extent of permissible copying varies with the purpose and character of the use." *Campbell*, 510 U.S. at 586-87.  Wholesale copying of a work does not preclude a finding of fair use and the use of an entire copyrighted image may be reasonable if it serves the defendant's intended purpose.  *See Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1118 (9th Cir. 2000); *see also Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1167 (9th Cir. 2007).

As explained in Section 4.3.1, the purpose of the Article is to inform readers of the dietary habits of families around the world and the health implications of these diets.  It specifically uses nine of Mr. Menzel's photographs as exemplars of the diets of average families from nine different countries.  It would thus be impossible for the Article to make its point without using these photographs, since the purpose of the Article is to comment on the healthiness of the diets of the average families appearing in Mr. Menzel's photographs.  FSS may have used the

entirety of each photograph, but doing so was necessary for its intended purpose. This factor is thus either neutral or weighs in FSS's favor.

### 4.3.4   Factor four: effect on the market

This factor considers "not only the extent of market harm caused by the particular actions of the alleged infringer, but also 'whether unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in a substantially adverse impact on the potential market' for the original." *Campbell*, 510 U.S. at 590 (citing Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.05[A][4]).   "Where the allegedly infringing use does not substitute for the original and seves a 'different market function,' such factor weighs in favor of fair use." *Seltzer*, 725 F.3d at 1179.   Transformative works are less likely to have an adverse impact on the original work than a use which merely supersedes the original.   *See Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 821 (9th Cir. 2003).

Mr. Menzel makes no allegations regarding the market for his photographs or how FSS's use of nine of his photographs in the Article has interfered with this market.   Rather, Mr. Menzel conclusorily states that "[d]ue to Counterdefendants' . . . acts of infringement, Counterclaimant has suffered general and special damages in an amount to be established at trial," without alleging any supporting facts.   (Doc. No. 20 at ¶ 23.)   Mr. Menzel references licensees of his photographs and Hungry Planet (Doc. No. 20 at ¶ 9) but does not allege FSS's use of his photographs in any way supersedes his own works.   There are thus no allegations regarding the relevant market that FSS's use could potentially harm, and this factor weighs in FSS's favor.

Because at least two of the fair use factors weigh in FSS's favor and none weigh in Mr. Menzel's favor, FSS's use of Mr. Menzel's photographs in the Article is a fair use.   The Court should dismiss this claim with prejudice.

**RANDAZZA** | LEGAL GROUP

### 4.4    Mr. Menzel Does Not State a Claim for Violation of the DMCA

Mr. Menzel alleges that FSS, in publishing the April 20, 2012 article, violated 17 U.S.C. § 1202(b) of the Digital Millennium Copyright Act ("DMCA"), which provides, in relevant part, that:

> [n]o person shall, without the authority of the copyright owner or the law –
>
> (1) **intentionally remove or alter** any copyright management information;
>
> (2) distribute . . . copyright management information **knowing that [it] has been removed or altered** without authority of the copyright owner or the law; or
>
> (3) distribute . . . works . . . **knowing that copyright management information has been removed or altered** without authority of the copyright owner or the law, knowing, **or**, with respect to civil remedies under section 1203, **having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title**.

17 U.S.C. § 1202(b) (emphasis added).

Mr. Menzel's claim for violation of the DMCA provides essentially no supporting facts.  The claim itself merely recites the language of the statute, additionally claiming that "Counterdefendants" intentionally removed and/or altered CMI, "in the form of metadata or visible text attribution, on the copy of at least one of the Subject Photographs."  (Doc. No. 20 at ¶ 27.)  Aside from failing to indicate which photos or how many allegedly had CMI removed or altered, merely reciting the elements of a claim for relief is not sufficient to defeat a Rule 12(b)(6) motion.  *See Iqbal*, 556 U.S. 662, 677.  There are also multiple problems with the factual elements of this allegation.  Mr. Menzel claims that the CMI at issue here consists of a textual credit for digital versions of the images, metadata in the image files containing the same information, and "textual credit in conjunction with the Subject Photographs" in the Hungry Planet book.  (Doc. No. 20 at ¶¶ 9-10.)

All allegations of removal of CMI in the form of a textual credit are contradicted by Exhibit A to the Amended Counterclaims.  A simple review of the allegedly infringed photographs shows that they do not contain any visible attribution to Mr. Menzel.  (*See* Doc. No. 21-1.)  Accordingly the Article, which allegedly infringes nothing other than these images, does not show images with this credit removed.  To the extent Mr. Menzel alleges a violation of the DMCA based on removal of CMI in the form of textual credit on either digital images or images appearing in his physical book, the Amended Counterclaims clearly show this did not, and could not, happen.  The claim must be dismissed.

To the extent Mr. Menzel claims FSS removed CMI from Mr. Menzel's photographs appearing on his web site or in digital versions of Hungry Planet, his claim still fails.  The Amended Counterclaims are almost entirely devoid of factual allegations as to what CMI Mr. Menzel employed or what CMI FSS allegedly removed or altered.  The allegedly infringed photos do not contain visible text attribution, which leaves metadata in the digital image files "noting Counterclaimant's authorship and ownership" as the only CMI at issue here. (Doc. No. 20 at ¶ 9.)

It is apparent on the face of the Article that FSS was merely republishing an article, with attendant photographs, that previously appeared on the Natural Society web site.  (*See* Doc. Nos. 1-1 & 17-2.)  There are no factual allegations that FSS, rather than Natural Society or some other third party, allegedly removed or altered the metadata of Mr. Menzel's photographs.  Mr. Menzel does not identify any potential third parties who may altered or removed the metadata, either.  In an attempt to satisfy the intent requirement of the statute, Mr. Menzel alleges that FSS must have known that this metadata was removed before publishing the Article, and that removal "would enable, facilitate, and conceal infringement of

the Subject Photographs' owner's exclusive rights under the Copyright Act." (Doc. No. 20 at ¶ 28.)  The latter contention in this paragraph is an attempt to satisfy 17 U.S.C. § 1202(b)(3), but all allegations regarding enabling conduct are merely conclusory, with no factual support, and should be ignored at this stage. The allegation of specific knowledge that metadata had been removed is insufficient as well.  17 U.S.C. § 1202(b)(2)-(3) requires that a defendant knowingly "distribute" either CMI that has been altered or removed or works with altered or removed CMI.  But FSS did not "distribute" any such information or works.  There is no allegation that FSS distributed any CMI, and Mr. Menzel cannot make this allegation given that the images in the Article are not hosted by FSS.  For the same reason, FSS did not "distribute" any works with removed CMI, as Natural Society hosts the images in question.  Without distribution, there can be no liability for FSS. But even if FSS's conduct did amount to distribution of CMI and the photographs at issue, there is no possible basis for alleging FSS distributed Mr. Menzel's photos thinking it would induce, enable, facilitate, or conceal infringement because the Article mentions the source of the photographs and provides a link for users to purchase copies of Mr. Menzel's book.  (*See* Doc. No. 1-1.)  All potential harm of FSS's alleged conduct is completely undercut by the text of the Article.

Mr. Menzel fails to state a claim for violation of the DMCA, and this claim must be dismissed.

**5.0   CONCLUSION**

For the foregoing reasons, the Court should dismiss all of Mr. Menzel's claims asserted in his Amended Counterclaims for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

Dated: April 29, 2019.          Respectfully Submitted,

RANDAZZA LEGAL GROUP, PLLC

/s/ Alex J. Shepard

Marc J. Randazza, CA Bar No. 269535
Alex J. Shepard, CA Bar No. 295058
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117

Attorneys for Plaintiff
Free Speech Systems, LLC

Case No. 3:19-cv-00711-WHO

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 29, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I further certify that a true and correct copy of the foregoing document is being served via transmission of Notices of Electronic Filing generated by CM/ECF.

Respectfully submitted,

/s/ Alex J. Shepard
Alex J. Shepard