Stephen M. Doniger (SBN 179314)
stephen@donigerlawfirm.com
Scott Alan Burroughs (SBN 235718)
scott@donigerlawfirm.com
Trevor W. Barrett (SBN 287174)
tbarrett@donigerlawfirm.com
Justin M. Gomes (SBN 301793)
jgomes@donigerlawfirm.com
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820
Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FREE SPEECH SYSTEMS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>PETER MENZEL,<br><br>Defendant. | Case No. 3:19-cv-00711-WHO<br>*Honorable William H. Orrick Presiding*<br><br>**PETER MENZEL'S OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS**<br><br>Date: June 12, 2019<br>Time: 2:00 p.m. |

**TABLE OF CONTENTS**

I. INTRODUCTION……………………………………………………………….……..1

II. ARGUMENT……………………………………………………………………..2

A. Legal Standard………………………………...……………………………2

B. The Counterclaims are Timely…………………..…………………………..2

C. The Copyright Infringement Claims are Well-Pled……...…………………4

D. The §1202 Claim is Well-Pled…………………………………………….....6

E. Fair Use May Best be Determined Later in this Action……………………..9

F. InfoWars' Exploitation is not Fair Use……………………………...…....9

*1. Purpose and character of the use*…………………………..…………9

*2. Nature of the copyrighted work*……………………………...………11

*3. Amount and substantiality of the portion used*……………………12

*4. Effect upon the market for the copyrighted work*…………………12

G. In the Alternative, Leave to Amend Should Be Granted………………13

III. CONCLUSION………………………………………………………………….14

# TABLE OF AUTHORITIES

Cases:

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001)………………4

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009)……………………………………….2

*Browne v. McCain*, 611 F. Supp. 2d 1073 (C.D. Cal. 2009)………………………9

*Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336 (9th Cir. 1996)………………………2

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 114 S. Ct. 1164, 127 L. Ed. 2d 500 (1994)……….….*passim*

*Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394 (9th Cir.1997)………………………………………….9

*Fischer v. Forrest*, No. 14cv1304 (PAE), 2015 WL 195822 (S.D.N.Y. Jan. 13, 2015)…………………………………8

*Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180 (9th Cir. 2016)…………………………………….……6-7

*Hall v. City of Santa Barbara*, 833 F.2d 1270 (9th Cir. 1986)……………………..2

*Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985)………………..….12

*Hustler Magazine, Inc. v. Moral Majority, Inc.*, 606 F. Supp. 1526 (C.D. Cal. 1985)………………………………….…10

*McGucken v. Chive Media Grp., LLC*, No. CV 18-01612-RSWL-KS, 2018 WL 3410095 (C.D. Cal. July 11, 2018)………………………………4

*Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074 (9th Cir. 1990)……...13

*Norse v. Henry Holt & Co.*, 991 F.2d 563 (9th Cir. 1993)……………………...12

*Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708 (9th Cir. 2001)……….13

*Perfect 10, Inc. v. Amazon. com, Inc.*, 487 F. 3d 701 (9th Cir. 2007)………*passim*

*Perfect 10, Inc. v. Google, Inc.*, 416 F. Supp. 2d 828 (C.D. Cal. 2006)…………10

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
572 U.S. 663, 134 S. Ct. 1962, 188 L. Ed. 2d 979 (2014)………………….3

*Photographic Illustrators Corp. v. Orgill, Inc.*,
118 F. Supp. 3d 398 (D. Mass. 2015)……………………………………7

*Playboy Entm't Grp, Inc. v. Happy Mutants, LLC*,
2018 U.S. Dist. LEXIS 69325 (C.D. Cal. Feb. 14, 2018)…………………..5

*Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700 (9th Cir. 2004)………2

*Rentmeester v. Nike, Inc.*,
883 F.3d 1111 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 1375 (2019)…...…11

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
806 F.2d 1393 (9th Cir. 1986)…………………………………………...13

*Stewart v. Abend*,
495 U.S. 207, 110 S.Ct. 1750, 109 L. Ed. 2d 184 (1990)…………………11

*UMG Recordings Inc. v. Global Eagle Entertainment, Inc.*,
2016 WL 345179 (C.D.Cal. Apr. 20, 2016)………………………….…..2

*VHT, Inc. v. Zillow Grp., Inc.*,
918 F.3d 723 (9th Cir. 2019)……………………………………………..9

*Williams v. Cavalli*, No. CV 14-06659-AB JEMX,
2015 WL 1247065 (C.D. Cal. Feb. 12, 2015)……………………………8

<u>Statutes:</u>

U.S.C. § 106……………………………………………………...………1, 4

17 U.S.C. § 501…………………………………………………………….4

17 U.S.C. § 1202…………………………………………………………...6-9

17 U.S.C. § 1203…………………………………………………………...8

Fed. R. Civ. P. § 15(a)……………………………………………………….13

Secondary Sources:

3 M. Nimmer & D. Nimmer, Copyright § 12.05 (2013)…………………………..….3

## IV. INTRODUCTION

The motion must be denied. Plaintiff-Counterdefendant Free Speech Systems, LLC, doing business as "InfoWars.com" ("InfoWars") violated multiple statutes when it posted and displayed verbatim copies online of numerous original photographs created by Defendant-Counterclaimant, Peter Menzel.

Mr. Menzel is a photojournalist who traverses the globe seeking stories of international interest, focusing often on cultural nuance through intimate personal depictions of people from all walks of life. He expends considerable time, effort, and resources to create original, unique, and inspiring photographs. Mr. Menzel's award-winning photographs have been published in National Geographic, Smithsonian, and Time, among many other influential publications. In addition, Mr. Menzel has produced six full-length books showcasing his photographs.

One of Mr. Menzel's most acclaimed works explores the typical weekly food purchases of 30 families from 24 countries around the world. Mr. Menzel traveled the globe creating stunning original photographs, which he then published in a book entitled, "Hungry Planet: What the World Eats." This book was extremely well-received, and garnered the James Beard Award for Best Book of the Year in 2006. As with each of his major publications, this book required an enormous personal and financial investment from Mr. Menzel. The planning, development, and execution of the project was a years-long process, but the results were extraordinary.

Despite having never obtained or even sought authorization from Mr. Menzel to use any of his works on its website, InfoWars posted an article displaying nine (9) of Mr. Menzel's photographs ("Subject Photographs"), without Mr. Menzel's name and attribution. These are violations of Sections 106 and 1202 of the Copyright Act,

and there is no basis for the relief InfoWars seeks.[1]

## V. ARGUMENT

### A. Legal Standard

Motions to dismiss for failure to state a claim are disfavored and rarely granted. *Hall v. City of Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir. 1986). To survive such a motion, a complaint must contain merely a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). Detailed factual allegations are not required. *Id.* In deciding a motion to dismiss, all material allegations of the complaint are taken as true and all reasonable inferences are drawn in Plaintiff's favor. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996). Under this standard, the challenge fails.

### B. The Counterclaims are Timely

It is settled that in a copyright infringement suit, "the statute of limitations does not prohibit recovery of damages incurred more than three years prior to the filing of suit if the copyright plaintiff was unaware of the infringement, and that lack of knowledge was reasonable under the circumstances." *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 706 (9th Cir. 2004). Where, as here, a rightsholder does not and reasonably could not have discovered the infringement at issue before the commencement of the three-year limitation period, damages are permitted outside the three-year window. *Id.*, *see also UMG Recordings Inc. v. Global Eagle Entertainment, Inc.*, 2016 WL 345179 (C.D.Cal. Apr. 20, 2016) (granting summary judgment and dismissing statute of limitations defense). As stated in his amended counterclaims, Mr. Menzel did not discover InfoWars' infringement until December of 2018, and it was reasonable that he did not do so prior. First Amended Answer and

---

[1] Should the Court find that Mr. Menzel's counterclaim is insufficient as pled, Mr. Menzel respectfully requests leave to amend the counterclaim to cure any such insufficiency.

Counterclaims ("FAAC") p. 9. As evinced by his litigation history, including as to photographs from this same project[2], Mr. Menzel polices his images, so InfoWars' assertion that "[h]ad he performed any investigation of unauthorized use on or after April 30, 2012, he would have discovered [InfoWars] use of his photographs," is baseless, and in fact demonstrably false. Should this Court require it, Mr. Menzel can amend his counterclaims to include more information concerning his prior efforts to unearth illicit exploitation of these copyrighted photographs, but his current allegations are sufficient at the pleading stage. At a minimum, InfoWars' groundless allegations on the matter should not absolve it of liability here.

Even if Mr. Menzel is limited to damages for only the three-year period before he filed his original counterclaims, InfoWars would still be liable for damages suffered during that period because it continued to display the Subject Photographs during that time. *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671, 134 S. Ct. 1962, 1969–70, 188 L. Ed. 2d 979 (2014) quoting 3 M. Nimmer & D. Nimmer, Copyright § 12.05[B][1][b], p. 12–150.4 (2013) ("If infringement occurred within three years prior to filing, the action will not be barred even if prior infringements by the same party as to the same work are barred because they occurred more than three years previously."). InfoWars displayed the infringing images and hyperlinked to

[2] From 2015 through 2018, Mr. Menzel filed at least eight different copyright infringement lawsuits against numerous website proprietors to defend his rights to his copyrighted photographs including at least three infringing posts bearing some or all of the Subject Photographs at issue here. *Peter Menzel v. Elite Daily, LLC, et al.* CACD Case No. 2:15-cv-01996-DMG-JEM; *Peter Menzel v. ClickShareDaily, LLC, et al.* CACD Case No. 2:15-cv-08303-ODW-JPR; *Peter Menzel v. Distractify, Inc., et al.* CAND Case No. 5:15-cv-05818-LHK; *Peter Menzel v. ViralNova, LLC, et al.* CACD Case No. 2:15-cv-04252-DMG-AJW; *Peter Menzel v. DamnFunnyPictures.com, et al.* CAND Case No. 5:16-cv-05600-NC; *Peter Menzel v. Trendland, LLC, et al.* CACD Case No. 2:16-cv-02352-GHK-JC; *Peter Menzel v. FoodBeast, LLC, et al.* CACD Case No. 2:16-cv-04695-DSF-JC; *Peter Menzel v. Terra Networks Operations, Inc., et al.* NYSD Case No. 1:18-cv-00522-AJN.

Natural Society's infringing post as recently as 2018, which is well within the three-year statute of limitations period. Mr. Menzel's copyright infringement claims are not time-barred.

C. **The Copyright Infringement Claims are Well-Pled**

Mr. Menzel adequately alleged copyright infringement by InfoWars**.** To plead copyright infringement, a rightsholder need only claim ownership of exclusive rights to a copyrighted work under 17 U.S.C. § 106, and violation of at least one of those rights by an alleged infringer. *A&M Records, Inc. v. Napster, Inc*., 239 F.3d 1004, 1013 (9th Cir. 2001). Mr. Menzel has done so here. Mr. Menzel pled ownership of "a number of discrete, original photographs" (the "Subject Photographs"), and the unauthorized publication of "a post displaying at least nine (9) of the Subject Photographs" by InfoWars. FAAC pp.8-9. These allegations alone are sufficient to plead copyright infringement. The right to display the Subject Photographs is an exclusive right under section 501, one that InfoWars admits to having violated. MTD at p. 6 ln. 21. Alleging unauthorized publication of a copyrighted photograph online is sufficient to plead copyright infringement. *McGucken v. Chive Media Grp., LLC*, No. CV 18-01612-RSWL-KS, 2018 WL 3410095, at *3 (C.D. Cal. July 11, 2018).

Whether or not InfoWars' own servers housed the unauthorized digital copies of the Subject Photographs is of no import. InfoWars seeks to rely on easily distinguishable caselaw to support the proposition that so long as a party's own servers do not house infringing material, that party cannot be liable for knowingly, and intentionally displaying infringing material to derive revenue. In *Perfect 10, Inc. v. Amazon.com, Inc.*, 9th Circuit panel ruled that Google's framing of in-line linked full-sized images in user search results was not direct infringement of a copyright owner's display right, but that such activity "raises [] contributory liability issues." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1161 (9th Cir. 2007). Here the accused infringer's behavior is much more targeted and nefarious – InfoWars did not

simply facilitate an automated image search which happened to include infringing results, rather it intentionally reproduced an entire infringing article containing copies of nine copyrighted works.[3]

InfoWars' preferred reading of *Perfect 10* leaves an unjust loophole whereby those who are unscrupulous enough could profit greatly from facilitating the illicit display of copyrighted works and face no liability for copyright infringement so long as they never store copies of the works on their own computer systems. According to InfoWars, a person could set up a webcam in a showing of the latest blockbuster film, livestream that showing online, derive ad revenue from its website "framing" the film, and still not be liable for copyright infringement so long as the film is not stored on any hardware that person owns or controls. *See Leader's Inst., LLC v. Jackson*, No. 3:14-CV-3572-B, 2017 WL 5629514, at *11 (N.D. Tex. Nov. 22, 2017). This is an absurd result that would be in direct contravention of the Copyright Act's purpose.

Even assuming InfoWars' reading of *Perfect 10* is correct, and further assuming that InfoWars actually framed the full-size infringing images through in-line linking in the body of the post it intentionally published on its website, there is still no question that its actions amount to contributory infringement of Mr. Menzel's copyrights in the Subject Photographs. "[O]ne who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1171 (9th Cir. 2007). InfoWars, a sophisticated media company with knowledge concerning photography and copyrights (FAAC p. 13), and thereby knowledge that the Natural Society use of the Subject Photographs was unlawful, hyperlinked to the infringing article and every infringed image hosted

[3] *Playboy Entm't Grp, Inc. v. Happy Mutants, LLC*, 2018 U.S. Dist. LEXIS 69325 (C.D. Cal. Feb. 14, 2018) is even less applicable because the copyrighted images could not even be seen from the alleged infringer's website – users needed to manually click hyperlinks to view those images on a third-party site.

on Natural Society's site – driving additional web traffic and related advertising revenue to Natural Society as a result. *Perfect 10*, 508 F.3d 1146, at 1172. This materially contributed to the infringement of the Subject Photographs because such hyperlinking "assists websites to distribute their infringing copies to a worldwide market and assists a worldwide audience of users to access infringing materials." *Id.* Because of InfoWars' actions, more users viewed illicit copies of the Subject Photographs, and Natural Society (and InfoWars) reaped additional advertising revenue. InfoWars re-publication of the infringing Natural Society article and hyperlinking to Natural Society's site is at least contributory copyright infringement. Should the Court find Mr. Menzel's current counterclaims insufficient to plead contributory infringement, Mr. Menzel can amend to include explicit direct infringement allegations against Natural Society and elaborate on InfoWars' contributions to Natural Society's infringement.

D. **The §1202 Claim is Well-Pled**

Peter Menzel has sufficiently alleged that InfoWars violated 17 U.S.C. §1202, and there is no merit to the challenge to this claim. Section 1202(b) of the Digital Millennium Copyright Act prohibits, *inter alia*, the distribution of works "knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law," and with knowledge that such distribution "will induce, enable, facilitate, or conceal" copyright infringement. *Friedman v. Live Nation Merch., Inc.*, No. 14-55302, 2016 WL 4394585, at *6 (9th Cir. Aug. 18, 2016), citing 17 U.S.C. § 1202(b). Mr. Menzel adequately alleges that InfoWars has done just that.

If a third party removed Mr. Menzel's copyright management information ("CMI") from the Subject Photographs, InfoWars still violated this statute when it displayed the Subject Photographs on its website. "[C]opyright management information" refers to various types of "information conveyed in connection with

copies ... of a work," including the name of the work, the name of the author, and the name of the copyright holder, among others. Id. at fn. 3, citing 17 U.S.C. § 1202(c).[4] Liability is not limited to those that remove the CMI, it also attaches to those who have "distributed [] works with the knowledge that CMI had been removed, even if [the violator] did not remove it. Id., citing 17 U.S.C. § 1202(b)(3). Evidence establishing that the only change to the work was the removal of the CMI is evidence that this section has been violated. *Id*. at *7. The statute is "extremely broad, with no restrictions on the context in which such information must be used in order to qualify as CMI. *Murphy v. Millennium Radio Grp.* LLC, 650 F.3d 295, 302 (3d Cir. 2011) (holding that removal of author's name in "gutter credit" near image fell within protection of § 1202).

Thus, "a cause of action under § 1202 of the DMCA potentially lies whenever the types of information listed in § 1202(c)[ ] and 'conveyed in connection with copies of a work including in digital form' [are] falsified or removed, regardless of the form in which that information is conveyed." *Photographic Illustrators Corp. v. Orgill, Inc.*, 118 F. Supp. 3d 398, 406 (D. Mass. 2015), *quoting Murphy*, 650 F.3d at 305 (3d Cir. 2011).

Here, Mr. Menzel has alleged that InfoWars removed his copyright management information from the Subject Photographs. Specifically, Mr. Menzel alleges that InfoWars violated the statute by "intentionally removing and/or altering the copyright management information, in the form of metadata or visible text attribution, on the copy of at least one of the Subject Photographs, and distributing copyright management information with knowledge that the copyright management information had been removed or altered without authority of the copyright owner or

[4] CMI includes: "[t]he title and other information identifying the work," "[t]he name of, and other identifying information about, the author of a work," and "[t]he name of, and other identifying information about, the copyright owner of the work." 17 U.S.C. § 1202(c).

the law, and distributing and publicly displaying the material, knowing that copyright management information had been removed or altered without authority of the copyright owner or the law, and knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that the conduct would induce, enable, facilitate, or conceal an infringement of any right under this title." FAAC pp. 12-13, para. 27. These allegations are sufficient to support the claim.

It is settled that the removal of the artist's name from a work is a violation of this section. *Williams v. Cavalli*, No. CV 14-06659-AB JEMX, 2015 WL 1247065, at *2-3 (C.D. Cal. Feb. 12, 2015) (name of artist on mural was CMI); *Fischer v. Forrest*, No. 14cv1304 (PAE), 2015 WL 195822, at *8 (S.D.N.Y. Jan. 13, 2015) (inclusion of the author's surname in product name published on website and in catalogue within copyright-protected text). Here, Mr. Menzel alleges that all lawful uses of his Subject Photographs include CMI and that InfoWars either itself removed that CMI, or at least published the images with knowledge that the CMI had been removed. FAAC p. 9 paras. 9-10; pp. 12-13 paras 27-28. "If [InfoWars] did not itself remove Counterclaimant's copyright management information from the Subject Photographs, it was aware that such information was removed before it published the Subject Post, and was aware that such removal would enable, facilitate, and conceal infringement of the Subject Photographs' owner's exclusive rights under the Copyright Act." Id. at p. 13, para 28. This is a violation of the statute. The current counterclaims sufficiently allege a violation of § 1202, but should the Court require more specific factual allegations with respect to this issue, Mr. Menzel will be willing and able to provide such information.

It is also a violation of § 1202 to publish or distribute a copyrighted work with false CMI. 17 U.S.C. § 1202(a). Here InfoWars did just that when it displayed the Subject Photographs through its website under an InfoWars byline, with a footer that states "© 2018 Infowars.com is a Free Speech Systems, LLC Company. © 2018"

Dkt. No. 1-1 pp. 2, 13. This information specifically suggests to the reader that InfoWars authored or owns the works depicted in this article. This is false CMI in direct contravention of § 1202.

### E. **Fair Use May Best be Determined Later in this Action**

Fair use is a mixed question of law and fact which generally is not considered on a 12(b)(6) motion to dismiss. *Browne v. McCain*, 611 F. Supp. 2d 1073, 1078 (C.D. Cal. 2009)*, Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1403 (9th Cir.1997). The parties have not yet conducted discovery here, so the evidentiary record is essentially non-existent. While it is apparent from the face of the accused post itself that the fair use defense is inapplicable here, the Court may be better served withholding a determination on this issue at the pleadings stage.

### F. **InfoWars' Exploitation is not Fair Use**

InfoWars' unauthorized exploitation of the Subject Photographs is not fair use. Fair use is an affirmative defense to a copyright infringement claim with four enumerated factors under 17 U.S.C. §107: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. Every factor weighs against fair use here.

#### *1. Purpose and character of the use*

Use that does not transform the copyrighted work, and that is commercial in nature is unlikely to be fair use. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578–79, 114 S. Ct. 1164, 1171, 127 L. Ed. 2d 500 (1994). To determine if a use is transformative, a Court must examine "whether and to what extent [the accused use] adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *VHT, Inc. v. Zillow Grp., Inc.*, 918

F.3d 723, 742 (9th Cir. 2019) (internal quotations omitted), *citing Campbell*, 510 U.S. at 579, 114 S.Ct. 1164. InfoWars' use of the Subject Photographs is not transformative. The article merely characterizes the food that is depicted in the copied images and adds minimal if any content. Dkt. No. 1-1. Indeed, the bulk of the information a "reader" of the article would obtain from this post is apparent in the copied images themselves, not exclusively from the article's claimed "commentary." The infringing article adds such "commentary" as "you will notice a more prominent display of vegetables and fresh fish," and "[y]ou can see that this family drinks about 6 larger-sized bottles [of soda] per week." Dkt. No. 15-2 pp.3-4. A reader will readily glean these and other facts by simply looking at the Subject Photographs themselves.

With respect to this factor, it is also appropriate for a court to consider "whether the alleged infringers copied the material to use it for the same intrinsic purpose for which the copyright owner intended it to be used." *Hustler Magazine, Inc. v. Moral Majority, Inc.*, 606 F. Supp. 1526, 1535 (C.D. Cal. 1985), *aff'd*, 796 F.2d 1148 (9th Cir. 1986), citing *Marcus v. Rowley*, 695 F.2d 1171, 1175 (9th Cir. 1983); *Jartech, Inc. v. Clancy*, 666 F.2d 403, 407 (9th Cir.), *cert. denied* 459 U.S. 879, 103 S.Ct. 175, 74 L.Ed.2d 143 (1982). The infringing article, Mr. Menzel's book, the Subject Photographs, and lawfully licensed articles featuring the Subject Photographs and others from this project all set out to do the exact same thing that the article attempts to do – highlight the variation of food consumption across cultures, and comment on the health (and wealth) implications inherent to those differences. As such, the article does not transform the way the images are viewed or used, and simply exploits the images in the exact way that Mr. Menzel intended to. *Id.* The infringing article fails to "add something new" or alter the original lawful uses with "new expression, meaning, or message." *Campbell*, 510 U.S. at 579, 114 S.Ct. 1164. InfoWars' use is not transformative.

Furthermore, InfoWars' use is absolutely commercial. Use of copyrighted works that generates advertising revenue online is commercial use. *Perfect 10 v. Google, Inc.*, 416 F. Supp. 2d 828, 846 (C.D. Cal. 2006), *aff'd in part, rev'd in part and remanded sub nom*. *Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701 (9th Cir. 2007), *amended and superseded on reh'g*, 508 F.3d 1146 (9th Cir. 2007), and *aff'd in part, rev'd in part and remanded sub nom. Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007). Because InfoWars derived advertising revenue from views of this article on its site, its use of the Subject Photographs was commercial. FAAC p. 10, para. 15. This factor strongly weighs against fair use.

*2. Nature of the copyrighted work*

This factor concerns the "thickness" of the copyright in question, which is determined by how creative a work is. *Campbell*, 510 at 586, *Stewart v. Abend*, 495 U.S. 207, at 237–238, 110 S.Ct. 1750, at 1768–1769, 109 L. Ed. 2d 184 (1990). The more creative a work, the "thicker" or broader its copyright protection, and the less likely an unauthorized use is fair. *Id*. Photographs encapsulating a wide range of creative choices, such as the Subject Photographs, are entitled to broad copyright protection. *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1120 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 1375 (2019), *citing Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913-914, 916 (9th Cir. 2010), *as amended on denial of reh'g* (Oct. 21, 2010). Mr. Menzel made dozens of creative choices for every one of the painstakingly arranged Subject Photographs because there are innumerable ways to arrange and depict several dozens of food items and the family that owns those items. The infringed Subject Photographs are the result of countless creative decisions, are entitled to broad or "thick" protection, and are the type of creative, expressive work the Copyright Act is specifically intended to promote. *Id.* This factor weighs against fair use.

*3. <u>Amount and substantiality of the portion used</u>*

Copying substantial portions of a copyrighted work, especially where the portion taken is unreasonably large in light of the accused infringer's purpose, weighs against fair use. *Campbell*, 510 U.S. at 586. InfoWars used the entirety of nine (9) distinct copyrighted works here. The article's author did not need to include the Subject Photographs at all to make a statement concerning the eating habits of various cultures around the world, and certainly did not need to include all of the Subject Photographs, or the portions of any of the photographs depicting the people Mr. Menzel worked with, but he did so anyways. Indeed, even a small taking of a copyrighted work may weigh against fair use if the portion taken is the "heart" of the allegedly infringed work. *Norse v. Henry Holt & Co.*, 991 F.2d 563, 566 (9th Cir. 1993), *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 565, 105 S.Ct. 2218, 2233, 85 L.Ed.2d 588 (1985). Here InfoWars took not only the "heart" of the Subject Photographs, but every other piece of them as well. This factor strongly weighs against fair use.

*4. <u>Effect upon the market for the copyrighted work</u>*

"This last factor is undoubtedly the single most important element of fair use." *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 566, 105 S. Ct. 2218, 2233–34, 85 L. Ed. 2d 588 (1985) (internal citations omitted). This factor concerns "not only the extent of market harm caused by the particular actions of the alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original." *Campbell*, 510 U.S. at 590, *Burnett v. Twentieth Century Fox Film Corp.*, C.D.Cal.2007, 491 F.Supp.2d 962. "This inquiry must take account not only of harm to the original but also of harm to the market for derivative works." *Harper*, 471 U.S. at 568, 105 S. Ct. at 2234. Mr. Menzel not only sells a book featuring these copyrighted works, but he also licenses these photographs for

the type of use that InfoWars made here. FAAC pp. 8-9, paras. 8-9. InfoWars exploiting these images in the same way that Mr. Menzel specifically licenses them necessarily diminishes the licensing market for these works and diminishes the market for any derivative works incorporating the Subject Photographs, including Mr. Menzel's book. Indeed, the infringing post is simply a market replacement for lawful licensed uses of the Subject Photographs and an inferior stand-in for Mr. Menzel's book.[5] If InfoWars' behavior became widespread, Mr. Menzel would lose licensing revenue from his copyrighted photographs. *Campbell*, 510 U.S. at 590. This factor weighs strongly against fair use.

### G. **In the Alternative, Leave to Amend Should Be Granted**

Notwithstanding the above, should the Court find any defect in the operative pleading, Mr. Menzel is certain that it can be remedied and would request leave to amend. Federal Rule of Civil Procedure 15(a) requires that leave to file an amended pleading be "freely given when justice so requires." "If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Indeed, the Ninth Circuit has stated that the policy favoring allowing amendment should be applied with "extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001), *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). Although Mr. Menzel is of the belief that his amended counterclaims sufficiently plead his causes of action, Mr. Menzel should be given the opportunity to cure any deficiencies perceived by the Court.

---

[5] That the infringing article allegedly includes a link to an Amazon search result for the book's title – not the book's actual listing – does not negate the market harm that InfoWars' unauthorized exploitation of these photographs inflicted. Dkt. No. 17-1.

## III. CONCLUSION

InfoWars' motion fails. To the extent that additional facts must be pled, Mr. Menzel respectfully requests leave to amend, as the putative defects are easily curable. The current allegations, however, are sufficient and this motion should be denied.

Respectfully submitted,

Dated: May 13, 2019

By: */s/ Justin M. Gomes*
Scott Alan Burroughs, Esq.
Justin M. Gomes, Esq.
DONIGER / BURROUGHS
Attorneys for Defendant-Counterclaimant
PETER MENZEL