UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREE SPEECH SYSTEMS, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>PETER MENZEL,<br><br>    Defendant. | Case No. 19-cv-00711-WHO<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND DENYING MOTION TO STRIKE**<br><br>Re: Dkt. Nos. 22, 23 |

In this action, plaintiff Free Speech Systems, LLC ("FSS") seeks a declaration that it has not directly, contributorily, or vicariously infringed on defendant Peter Menzel's copyrights. Menzel filed a First Amended Answer and Counterclaims (FAAC) that raises several affirmative defenses to FSS's complaint and seeks relief against FSS for copyright infringement and violation of the Digital Millennium Copyright Act. Before me are FSS's Motion to Dismiss Menzel's amended counterclaims and a Motion to Strike most of Menzel's affirmative defenses. Menzel has not stated a claim for contributory negligence because he did not identify a third party infringer, and has not stated a DMCA claim because he did not describe which photographs had copyright management information (CMI) removed or what the removed CMI was. He has leave to amend those claims. Otherwise, FSS's motions are denied.

**BACKGROUND**

Peter Menzel is a resident of Napa and a photographer. FAAC, pg. 2 ¶ 2 [Dkt. No. 20] (admitting allegations in Complaint). In a series of photographs that Menzel posted on his website and used in his book, *Hungry Planet: What the World Eats*, Menzel showed the weekly food purchases of families from around the world. *Id.*, pg. 2 ¶ 8, pg. 8 ¶ 8. He published and registered the book, which included the photographs, and hosted the photographs on his website, "where each image was accompanied by a textual credit" noting Menzel's ownership and included "metadata" in the image files. *Id.*, pg. 8 ¶ 8, pg. 9 ¶ 9. *Hungry Planet* also included a textual credit attributing the ownership and authorship of the photographs to Menzel. *Id.*, pg. 9 ¶ 10. He

licensed "a number" of the photographs to media outlets, requiring his licensees to include a textual credit or metadata reflecting his authorship and ownership. *Id.*, pg. 9 ¶ 9.

FSS is a limited liability company based in Texas and the owner and operator of InfoWars, a "news and opinion website." *Id.*, pg. 2 ¶¶ 1, 6. On April 30, 2012, after the book's publication and the posting of the photograph's on Menzel's website, a post (Post) titled *Amazing Photos Show What the World Really Eats* appeared on InfoWars. *Id.*, pg. 10 ¶ 18; Compl. Ex. 1 (Post) at 2 [Dkt. No. 1-1].[1] The Post featured nine of Menzel's *Hungry Planet* photographs without his authorization or consent. FAAC, pg. 9 ¶ 11, pg. 11 ¶ 20. While the Post attributes the photographs to Menzel's book, it does not attribute them to Menzel specifically. Post at 2. At the end of the Post is a sentence explaining that the article "first appeared at *Natural Society*." Post at 7.[2]

FSS alleges that Menzel sent it a cease and desist letter dated December 26, 2018, asserting FSS posted the photos without his authorization and requesting that FSS remove his photographs from InfoWars. Compl. Ex. 2 (C&D Letter) at 2-3 [Dkt. No. 1-2]. FSS responded to the letter on January 10, 2019, and told Menzel that it removed the Post and his photographs from its website. Compl. Ex. 3 (Response Letter) at 2 [Dkt. No. 1-3].

---

[1] In its Motion to Dismiss, FSS asks for judicial notice of the Post as it appeared on InfoWars, arguing that the Post has been incorporated by reference through Menzel's references to it in his FAAC. Mot. to Dismiss (MTD) 2 n.1 [Dkt. No. 22]; Compl. Ex. 1 (Post). Under the "incorporation by reference" doctrine, a court may "consider materials incorporated into the complaint or matters of public record," including "documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). Because Menzel repeatedly refers to the Post and includes its web address in his counterclaims (FAAC, pg. 10 n.1), and in opposition does not oppose the request or dispute that Exhibit 1 to FSS's Complaint is a true and correct copy of the Post, this request is GRANTED.

[2] FSS also seeks judicial notice of other information, including the fact that the Post included a hyperlink to the amazon.com page where *Hungry Planet* could be purchased (MTD 2 n.2), as well as the fact that when a reader clicks on the photographs in the Post as it appeared on the InfoWars site, the reader was "taken" to the naturalsociety.com website "where the images are stored." MTD 3 & n.4. However, FSS provides no authority that on a motion to dismiss I can take judicial notice of the underlying code in a copy of the Post located at some location at some unknown time. The underlying code in the Post and the location of any hyperlinks in the Post that "pointed to" during the relevant time period must be shown through admissible evidence. Absent apposite case authority, those "facts" are not subject to judicial notice in support of its Motion to Dismiss.

In the cease and desist letter, Menzel alleged that FSS violated the Copyright Act through its unauthorized use of his photographs and violated the DMCA by removing his Copyright Management Information (CMI) from the photographs displayed on the InfoWars site. C&D Letter at 2-3. FSS denied the allegations, contending that Menzel's claims were time-barred, that the doctrine of fair use protected FSS's use of the photographs, and that FSS had no intention of infringing Menzel's copyrights. Response Letter at 2-4. Subsequently, FSS invited Menzel to make a reasonable settlement demand to avoid litigation. Compl. Ex. 4 (Email Exchange) at 4 [Dkt. No. 1-4]. On January 22, 2019, Menzel authorized a settlement demand. Compl. Ex. 5. (Demand Letter) at 5 [Dkt. No. 1-5]. FSS filed a complaint for declaratory relief under 28 U.S.C. § 2201 on February 8, 2019. Compl. ¶ 1 [Dkt. No. 1].

FSS's Complaint requests a declaration that its use of Menzel's photographs did not infringe on his copyrights, a declaration that the three-year statute of limitations bars Menzel from bringing copyright infringement claims, and an award of its reasonable costs and expenses, including attorney fees. *Id.* ¶ 24. In the Amended Answer and Counterclaims, Menzel raises twelve affirmative defenses, including an assertion that FSS fails to state a declaratory relief claim and that FSS's request for attorney fees is improper. FAAC, pg. 4 ¶ 1, pg. 6 ¶ 10. Menzel also asserts his own claims for copyright infringement and violation of the DMCA against FSS and additional unnamed counterdefendants. *Id.*, pg. 8 ¶ 6, pg. 10 ¶ 16, pg. 12 ¶ 27.

In its Motion to Dismiss Menzel's counterclaims, FSS argues that Menzel's claims are time-barred, that he fails to state a claim for copyright infringement, and that he fails to state a claim for violation of the DMCA. MTD 4, 6, 14. FSS also asserts that its use of Menzel's photographs is protected under the fair use doctrine as a matter of law. *Id.* 8. It also seeks to strike ten of Menzel's twelve affirmative defenses, contending that those defenses are redundant, impertinent, and that Menzel fails to plead sufficient facts. Mot. to Strike 1, 5 [Dkt. No. 23].

**LEGAL STANDARD**

**I.     MOTION TO DISMISS**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The same standard applies when

3

evaluating a motion to dismiss a counterclaim. *Swingless Golf Club Corp. v. Taylor*, 679 F. Supp. 2d 1060, 1066 (N.D. Cal. 2009). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *See Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

## II.   MOTION TO STRIKE AFFIRMATIVE DEFENSES

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The function of a motion to strike under Rule 12(f) is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing of those issues before trial. *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*,

4

510 U.S. 517 (1994) (citation omitted). Motions to strike "are generally disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice." *Rosales v. Citibank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001). In most cases, a motion to strike should not be granted unless "the matter to be stricken clearly could have no possible bearing on the subject of the litigation." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004).

In addition, courts often require some showing of prejudice by the moving party before granting a motion to strike. *Hernandez v. Dutch Goose, Inc.*, No. C 13-03537 LB, 2013 WL 5781476, at *5 (N.D. Cal. Oct. 25, 2013). In resolving a motion to strike, the pleadings must be viewed in the light most favorable to the nonmoving party. *Platte Anchor Bolt*, 352 F. Supp. 2d at 1057. "Any doubt concerning the import of the allegations to be stricken weighs in favor of denying the motion to strike." *Park v. Welch Foods, Inc.*, No. 5:12-CV-06449-PSG, 2015 WL 1231035, at *1 (N.D. Cal. Mar. 20, 2014).

**DISCUSSION**

**I.    MOTION TO DISMISS**

**A.    Statute of Limitations under 17 U.S.C. § 507(b)**

Copyright claims must be brought within three years after the claim accrues. 17 U.S.C. § 507(b). The Ninth Circuit follows the "discovery rule" of claim accrual; the three-year clock begins when a party discovers, or reasonably should have discovered, the infringement. *See Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 706 (9th Cir. 2004). "Where . . . a plaintiff contends that the statute of limitations is not a bar based on the discovery rule . . . , the plaintiff bears the burden of proving the applicability of such." *Garcia v. Coleman*, No. C-07-2279-EMC, 2008 WL 4166854, at *5 (N.D. Cal. Sept. 8, 2008). This inquiry raises a question of fact but may be considered on a motion to dismiss if no reasonable finder of fact could conclude that the claimant's lack of knowledge was reasonable under the circumstances. *See Goldberg v. Cameron*, 482 F. Supp. 2d 1136, 1148 (N.D. Cal. 2007) (dismissing a claimant's infringement claims as time-barred because his lack of knowledge due to a twenty-year spiritual journey was unreasonable under the circumstances).

5

In addition to the discovery rule, the "separate-accrual rule" in copyright law provides that "when a defendant commits successive violations [of the Copyright Act], the statute of limitations runs separately from each violation. Each time an infringing work is reproduced or distributed, the infringer commits a new wrong. Each wrong gives rise to a discrete 'claim' that 'accrue[s]' at the time the wrong occurs." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671 (2014) (footnotes omitted); *see also Media Rights Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1023 (9th Cir. 2019).

The parties disagree on when Menzel's copyright claim accrued. There is no dispute that the Post appeared on InfoWars on April 30, 2012, and so FSS argues that Menzel is barred from bringing a copyright infringement claim against FSS because he reasonably could have discovered the allegedly infringing material by conducting an investigation into the unauthorized use of his photographs. MTD 4, 6. Menzel counters that he did not discover the Post until December 2018. FAAC, pg. 9 ¶ 11. He states that he does not "frequent infowars.com, and could not have reasonably discovered" the Post before that. *Id*. He also asserts that he has regularly enforced his intellectual property rights, having filed eight copyright infringement lawsuits from 2015 to 2018, at least three of which were about the same photographs at issue here. Oppo. 3 n.2 [Dkt. No. 25]. He argues that despite taking reasonable steps to protect his copyrighted works, he simply did not discover the allegedly infringing Post on InfoWars until December 2018. *Id.* at 2-3.

In reply, FSS argues that Menzel's "habit of searching for infringement" makes it less reasonable for him to claim it took him seven years to discover the allegedly infringing Post on InfoWars. Reply 2-3 [Dkt. No. 27]. To support its position, FSS relies on facts outside the pleadings, including the functionality of a "Google reverse image search" that purportedly allows a user to use the search engine to "instantaneously identify all the places on the Internet that image is used . . . ." *Id*. 2 (quoting Erez Rosenberg, *An Audio-Visual Notice of Use Database: A Solution to the Orphan Works Problem in the Internet Age*, 22 UCLA Ent. L. Rev. 95, 121 (2014)). FSS contends that conducting a Google reverse image search would have revealed InfoWars's use. Reply 2.

As noted above, reasonableness of discovering copyright infringement is generally a

question of fact.  Neither FSS nor Menzel cite any cases supporting their position that Menzel's delay in discovering the infringement by FSS was either reasonable or unreasonable as a matter of law.[3]  Ignoring the extra-judicial facts asserted by FSS (*e.g.*, Google reverse image searching) and considering only the alleged or admitted facts – that Menzel polices his copyrights but does not frequent the InfoWars site and that the Post was up as of April 30, 2012 – Menzel's pleading does not establish as a matter of law that his delay in filing suit was unreasonable.[4]  The Motion to Dismiss based on the statute of limitations is DENIED.

### B. Allegations of Copyright Infringement

To state a claim of direct copyright infringement, claimants must allege ownership of the allegedly infringed material and that the alleged infringers violated at least one exclusive right granted to copyright holders in 17 U.S.C § 106.  *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001).  Those exclusive rights include the right to display and distribute a work as well as the right to create a derivative work.  17 U.S.C. § 106.  Even if a claimant can show direct infringement, an alleged infringer may avoid liability if the elements of the fair use

---

[3] *But see In re Napster, Inc. Copyright Litig.*, No. C MDL-00-1369-MHP, 2005 WL 289977, at *1, *3 (N.D. Cal. Feb. 3, 2005) (where plaintiffs owned thousands of copyrighted works and defendant boasted about its efforts to frustrate copyright laws, a reasonable person in the claimants' position would have been on notice that Napster may have been infringing on their copyrights); *Heidari v. Dog Ear Pub. LLC*, No. 5:12-cv-00558-PSG, 2012 WL 1980352, at *1, *3 (N.D. Cal. June 1, 2012) (author's delay unreasonable as a matter of law where publisher had previously made changes to the book, issued press releases, and made the book available for sale and the author's representative told plaintiff that she may have a claim for copyright infringement, plaintiff's alleged lack of knowledge was unreasonable).

[4] As a result, I do not need to reach whether the continuing violations rule applies in this context where an article is original posted outside of the statute of limitations period but remains up and accessible within the statute of limitations period.  I note that the Supreme Court made clear in *Petrella* that harm from successive copyright violations is not the same as continuing harm from past violations.  572 U.S. at 671 n.6.  The one-time posting of an article on the internet is not the same as continued sales of an infringing movie; it is questionable whether continuing violations can be asserted on the facts alleged here.  *See, e.g.*, *Blazheiev v. Ubisoft Toronto, Inc.*, No. 17-cv-07160-EMC, 2018 U.S. Dist. LEXIS 182728, at *5 (N.D. Cal. Oct. 24, 2018) (concluding that issuing a press release with infringing content, even where that release was continually accessible, did not constitute a "continuing violation" under the DMCA); *Live Face on Web, LCC v. AZ Metroway, Inc.*, No. 5:15-cv-01701, 2016 U.S. Dist. LEXIS 108713, at *20 n.4 (C.D. Cal. Aug. 15, 2016) (holding that where defendants used copyrighted code in 2011 and simply allowed it to remain unchanged on their website through 2015, any harm to the plaintiff was based on the 2011 act of infringement and was not the result of new wrongs that accrued every month the website stayed online).

defense are shown.  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1159 (9th Cir. 2007).

It is undisputed that Menzel is the owner of the photographs.  Menzel alleges that FSS violated his copyright by its display and distribution of the images, as well as the creation of a derivative work in violation of Section 106.  FAAC, pg. 10 ¶¶ 18-19.  In moving and opposing the motion, the parties discuss only "display"; I will limit my analysis accordingly.

### 1. Display

Under the Copyright Act, a copyright owner has the exclusive right to display the copyrighted work publicly.  17 U.S.C. § 106.  As explained by the Ninth Circuit in *Perfect 10*, "display" means to show a copy of a work, where a copy is a material object in which a work is fixed.  508 F.3d at 1160 (quoting 17 U.S.C. § 101).  A work is fixed when its embodiment in a copy, "by or under the authority of the author, is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration."  17 U.S.C. § 101.

In *Perfect 10*, a case relied heavily on by FSS, the Ninth Circuit held that a photograph is a work that is fixed in a tangible medium of expression for purposes of the Copyright Act when it is embodied in a computer's server.  508 F.3d at 1160 (adopting the "server test").  There, a copyright owner sued Google and Amazon.com for facilitating access to infringing images when they appeared in a Google Image Search and (through an agreement with Google) on Amazon's website.  *Id*. at 1154-57.  By facilitating this access, Perfect 10 argued that Google's search engine directly infringed on its display rights.  *Id*. at 1159.  The court recognized that when website publishers republished Perfect 10's images without authorization, Google's search engine may have "automatically" indexed the underlying websites containing the images and provided thumbnail size versions of them in response to a user's Google search.  *Id*. at 1157.  When a user clicked on that thumbnail in the Google search results, the user's browser accessed the image from the third-party webpage and "in-line [linked]" to the full-size image stored on the third-party computer.  *Id*.  The image was "framed" by information from Google's webpage on the user's screen.  *Id*.

The court explained that under the Copyright Act, a person "displays a photographic image

8

by using a computer to fill a computer screen with a copy of the photographic image fixed in the computer's memory." *Id*. at 1160. Google directly infringed because its own computer servers stored thumbnail versions of Perfect 10's images and communicated and displayed the thumbnails directly to the user. *Id*. But with respect to the full-size images, the court held that because Google did not store any full-size images on its computer servers, it did not have a "copy" of the image to communicate and display in violation of Perfect 10's copyrights. *Id*. Rather than communicating and displaying a copy of the image itself, Google provided users with HTML instructions, which are "lines of text" and not images. *Id*. at 1161. The HTML instructions "do not themselves cause infringing images to appear on the user's computer screen" but "merely [give] the address of the image to the user's browser." *Id*. The court held that this was not the same as "displaying" an image in violation of the Copyright Act. *Id*.[5]

FSS argues that its conduct, as alleged by Menzel, is protected by the *Perfect 10* case because when readers of the Post clicked on Menzel's photographs they were "pointed" to the servers of naturalsociety.com where the images were allegedly stored. It contends that it did not itself store any of the photographs at issue; therefore, the copyright claim must be dismissed.

There are two problems with FSS's wholesale reliance on *Perfect 10*. First, FSS cites no case applying the *Perfect 10* server test outside of the context of search engines. Indeed, subsequent cases have refused to apply the *Perfect 10* server test outside of that context. *See, e.g., Goldman v. Breitbart News Network, LLC*, 302 F. Supp. 3d 585, 592 (S.D.N.Y. 2018); *The Leader's Inst., LLC v. Jackson* (*TLI*), 2017 WL 5629514, at *11 (N.D. Tex. Nov. 22, 2017). While these cases are from outside the Ninth Circuit, FSS has not provided *any* case within the Ninth Circuit applying the server test outside of the search engine context or in the context here, the wholesale posting of copyrighted material on a news site.

Second, even if the server test applies – and I am not concluding it does at this juncture – it

---

[5] Perfect 10 also argued that by "framing" the full-size images, Google was displaying them because it gave the impression that it was showing the image within a single webpage. *Perfect 10*, 508 F.3d at 1161. The court rejected this argument, holding that it did not matter if the "framing" caused computer users to believe they were viewing a single webpage because the Copyright Act does not protect a copyright holder against acts that cause consumer confusion. *Id*.

does not preclude the direct infringement claim on this motion to dismiss. As noted above, I have not (and absent apposite case authority will not) take judicial notice that Menzel's photographs were hosted on the naturalsociety.com site and were never saved on InfoWars's servers. While I have taken notice of the Post as presented in a hard copy attached to the Complaint under the doctrine of incorporation, whether the underlying code for the images pointed only to naturalsociety.com and only ever pointed to that site and whether the images were never saved on InfoWars's servers are not facts I can judicially notice at this juncture.

Menzel's direct infringement claim has been adequately alleged and the Motion to Dismiss this claim is DENIED.

### 2. Contributory Infringement

Contributory infringement is the intentional "inducing or encouraging [of] direct infringement." *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005). The Ninth Circuit has held that contributory infringement covers those who provide "material contributions" to the infringing conduct. *Perfect 10*, 508 F.3d at 1171. However, to state a claim of contributory infringement, a copyright holder must first allege direct infringement by a third party. *Id.* at 1169. After clearing this threshold, contributory liability can be imposed "in the context of cyberspace" when plausible facts are alleged that i) the defendant has actual knowledge that specific infringing material is available on its system and; ii) the defendant can take simple measures to prevent further damage to copyrighted works and; iii) the defendant continues to provide access to infringing works. *Id.* at 1171-72.

FSS relies on *Tarantino v. Gawker Media, LLC*, No. CV 14-603, 2014 U.S. Dist. LEXIS 77726, at *10-12 (C.D. Cal. Apr. 22, 2014) to argue that the contributory negligence claim is not sufficiently pleaded because nowhere in the FAAC does Menzel identify the third-party direct-infringer and because Menzel states no facts that could plausibly suggest FSS knew of the action of that third-party. In *Tarantino*, the screenwriter Quentin Tarantino brought a claim for copyright infringement against a news organization that posted hyperlinks to a leaked copy of his script. 2014 U.S. Dist. LEXIS 77726, at *4-6. Tarantino alleged copyright infringement by the general public but did not identify any particular individual who had infringed on his copyrights

10

because of the news organization's actions. *Id*. at *10-11. He only alleged that the website had provided the means to accomplish an infringing activity, which the court found was insufficient to state a claim for copyright infringement. *Id*. at *10. FSS argues that, here too, Menzel has only alleged that FSS provided the means to accomplish an infringing activity and that is not enough to state a contributory infringement claim. MTD 7.

In opposition, Menzel attempts to assert that his claim is sufficiently alleged. At the same time, he points to Natural Society and naturalsociety.com as the third-party direct-infringer and admits that he could "amend to include explicit direct infringement allegations against Natural Society and elaborate on InfoWars's contributions to Natural Society's infringement." Oppo. 6.

I agree that the contributory infringement has not been sufficiently pleaded. FSS's Motion to Dismiss is GRANTED with leave to amend.

### C. FSS's Fair Use Defense

The Copyright Act does not grant exclusive rights to the copyright holder. *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 432-33 (1984). Section 107 of the Copyright Act provides that use of copyrighted work for "purposes such as criticism, comment, news reporting, teaching . . . , scholarship, or research" is fair use and therefore not an infringement of copyright. 17 U.S.C. § 107. This affirmative defense assumes that copyright infringement has occurred and places the burden on the infringer to show why his use was fair. *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1170 (9th Cir. 2012).

In determining whether use of copyrighted work is protected under fair use, courts consider:

> (1) the purpose and character of the use, including whether the use is commercial or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107. The doctrine of fair use allows courts flexibility to interpret the copyright statute when its strict application would restrict the kind of creativity the statute intended to encourage. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994). These factors are assessed on a

11

case-by-case basis and weighed together in light of the purposes of copyright. *Id.* at 577-78. Though the fair use defense is a mixed question of law and fact, it may be decided on a motion to dismiss if there are no material facts in dispute. *See Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 530 (9th Cir. 2008). Where there is no genuine issue as to any material fact, the court is required to consider all allegations as true to determine whether they support a finding of fair use. *Id.*

Menzel asserts there are a number of material facts in dispute that weigh on the fair use determination, including the purpose and character of the Post as compared to Menzel's original purpose and use of the photographs,[6] the extent to which the Post was used for commercial purposes, and the effect the publication of the Post had on the market for Menzel's licensed photographs and book. *See* Oppo. 9-13; MTD 9-11, 13. Fair use cannot be resolved as a matter of law on this record. The Motion to Dismiss is DENIED on this ground.

### D. Violation of the DMCA

Section 1202(b) of the Digital Millennium Copyright Act provides that:

> No person shall, without the authority of the copyright owner or the law—
>
> 1. intentionally remove or alter any copyright management information;
> 2. distribute or import for distribution any copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner . . . or
> 3. distribute, import for distribution . . . works [or] copies of works . . . knowing that copyright management information has been removed or altered without authority of the copyright owner . . .
>
> knowing or having reasonable grounds to know that it will induce, enable, facilitate or conceal an infringement of any right under this title.

17 U.S.C. § 1202(b).

Section 1202(c) defines copyright management information (CMI) to include the

---

[6] FSS notes that Menzel does not allege infringement of any of the text from *Hungry Planet*, just the use of the copyrighted photographs. MTD 9. The parties dispute whether the photographs are themselves self-explanatory and whether the text added by the Post adds much if anything to the use of the photographs. *Id.*; Oppo. 9-10. This argument raises a question for resolution by the trier of fact.

12

following: "[the] title and other information identifying the work, including the information set forth on a notice of copyright;" "[the] name of, and other identifying information about, the author of a work;" and "[the] name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright." 17 U.S.C. § 1202(c).

In the Ninth Circuit, to establish knowing or having reasonable grounds to know that conduct will "induce, enable, facilitate or conceal," a plaintiff "must make an affirmative showing, such as by demonstrating a past 'pattern of conduct' or 'modus operandi,' that the defendant was aware or had reasonable grounds to be aware of the probable future impact of its actions." *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 674 (9th Cir. 2018). At the summary judgment stage, this claim requires providing evidence that the alleged infringer knew that the removal of the CMI would "induce, enable, facilitate, or conceal" copyright infringement. *Id.* at 673. At the pleading stage, the claimant must plead facts plausibly showing that the alleged infringer had this required mental state. *Philpot v. Alternet Media, Inc.*, No. 18-cv-04479-TSH, 2018 WL 6267876, at *5 (N.D. Cal. Nov. 30, 2018).

Menzel asserts a counterclaim for violation of Section 1202(b) of the DMCA, alleging that FSS or an unidentified counterdefendant intentionally removed the CMI from at least one of his photographs. FAAC, pg. 12 ¶ 27. This CMI, Menzel claims, was "in the form of metadata or visible text attribution," which he alleges accompanied the photographs on his website. *Id.*, pg. 9 ¶ 9. This textual credit noted Menzel's "authorship and ownership" and the metadata "[reflected] the same." *Id.*

FSS argues that these allegations are insufficient because Menzel does not actually specify which of his photographs had what CMI in each of their forms (digital or in print). MTD 14. It points out that the images reproduced by Menzel in Exhibit A of the FAAC [Dkt. No. 21] do not themselves include any obvious CMI and there is no evidence that any textual credit was removed. MTD 15. It contends that because Menzel does not specify which photographs had CMI removed or altered and does not describe what specific CMI he employed in each medium, Menzel's allegations are insufficient. *Id.* 14-15. In response, Menzel does not identify where this information is in his FAAC or provide any clarification regarding what he is alleging with respect

13

to what CMI has been removed from which photographs. Instead, he simply restates his general assertions from the FAAC. Oppo. 7-8.

I agree that because Menzel has merely alleged that his photographs "were altered to remove certain of [his] copyright management information" without providing any facts to identify which photographs had CMI removed or to describe what the removed or altered CMI was, he has not sufficiently stated a claim under Section 1202(b)(1) with respect to "removal," much less with respect to distribution under (b)(2) and (b)(3). Regarding distribution, Menzel simply reiterates the legal standard and alleges no facts in support. FAAC, pg. 12-13 ¶¶ 27-28. Without identifying what CMI FSS allegedly distributed or how that was distributed, and without identifying what CMI was removed prior to distribution and how that distribution was accomplished by defendants, Menzel has likewise failed to state a claim under Section 1202(b)(2) and (b)(3).[7]

The Motion to Dismiss is GRANTED on the DMCA claim. Menzel is given leave to amend to allege additional facts in support.[8]

## II. MOTION TO STRIKE AFFIRMATIVE DEFENSES

FSS also moves to strike ten of Menzel's twelve affirmative defenses, arguing that they are redundant, impertinent, or lack sufficient facts in support. It does not move to strike Menzel's first and tenth affirmative defenses for failure to state a claim and improper request for attorneys' fees.

Motions to strike affirmative defenses seldom simplify litigation, and this one is no exception. Menzel has alleged enough facts in the FAAC to support the defenses of "Acted in Good Faith" and "Acts of Third Parties." FSS's argument that certain of the affirmative defenses are duplicative of each other ("Unclean Hands," "Failure to Mitigate," "Acts and Omissions," "Consent," "Lack of Injury or Damages," and "Unjust Enrichment," MTS 5-7) may ultimately

---

[7] FSS argues it cannot be liable for any "distribution" under (b)(3) because the photographs were hosted on naturalsociety.com and not on its servers. Reply 14. However, as above, those assertions of fact are not properly considered on this Motion to Dismiss.

[8] In his Opposition, Menzel argues that FSS also violated 17 U.S.C. § 1202(a) by "[displaying]" his photographs under an InfoWars byline, "with a footer that states © Infowars.com is a Free Speech Systems, LCC Company. © 2018." Oppo. 8. Menzel does not allege this in his counterclaims, but if he wishes to pursue this claim, he may attempt to do so when he amends.

14

1  prove to be true, but their assertion does not add complexity to this action and will not require FSS
2  to incur additional time or expend additional money to defend this action.  *See Arnett v. Seaside*
3  *Trans. Servs., LLC*, No. 13-cv-01672-WHO, 2014 WL 117325, at *5 (N.D. Cal. Jan. 13, 2014).  It
4  makes more sense to see how the evidence develops before dismissing these defenses.  Finally, the
5  defenses of "Contributory/Comparative Negligence and Assumption of Risk" and "No Wrongful
6  Act," (MTS 6-7) might be relevant to defeat FSS's claim for attorneys' fees.  Oppo. to MTS 5-6
7  [Dkt. No. 24].  They are not "impertinent."  *Id*.  In any event, there is no prejudice to FSS if those
8  defenses remain in this case at this time; FSS will not be required to separately litigate them or to
9  incur additional costs in discovery.  The Motion to Strike is DENIED.

## CONCLUSION

FSS's Motion to Dismiss is GRANTED in part and DENIED in part.  Menzel did not unreasonably delay in bringing his claims as a matter of law.  He sufficiently states a copyright claim for direct infringement, but fails to plead a contributory infringement claim and is given leave to amend that claim.  FSS's fair use defense cannot be resolved as a matter of law on this record.  Menzel fails to state a claim under the DMCA, but is given leave to amend.  FSS's Motion to Strike the affirmative defenses is DENIED.

**IT IS SO ORDERED.**

Dated: June 18, 2019



William H. Orrick
United States District Judge